16252

#### OGILVIE v. SMITH
(54 S. E. (2d) 860)

See also 54 S. E. (2d) 863.

*Messrs. S. S. Seideman and H. L. Erckmann,* of Charleston, *for Appellant,*

*Messrs. Joseph Fromberg and Walter B. Wilbur,* of Charleston, *for Respondent.*

August 12, 1949.

OXNER, Justice.

This is an appeal by defendant from a general order of reference. The Court below held that the action was one in equity. Defendant challenges this construction and asserts that the complaint only states legal causes of action upon which he is entitled to trial by jury.

Two causes of action are separately stated in the complaint. In both it is alleged that plaintiff, a widow, conducted a lodging house in the City of Charleston, where in 1948 the defendant, an employee of the Atlantic Coast Line Railway Company, occupied a room for approximately four months and during that period "entered into a contract of marriage with the plaintiff." After stating these facts, the first cause of action contains the following allegations:

"During the pendency of said contract and while defendant continually represented to plaintiff and others his purpose and intention to consummate same at an early date, defendant fraudulently and deceitfully induced plaintiff from time to time and at various times to pay over to him sundry amounts of money in cash and issue sundry checks to his order and to pledge her financial credit for his use and benefit.

"Thereafter when plaintiff had no further funds to turn over to defendant, or to spend for his use and benefit, defendant abandoned said rooming house and openly and notoriously discontinued his attentions to plaintiff and repudiated his contract of marriage, while failing and refusing

to restore to plaintiff the money defendant had induced plaintiff to pay over to him, or to spend on his behalf, or to indemnify plaintiff from and against loss and damage by reason of having pledged her financial credit on his behalf.

"By reason of defendant's fraudulent and deceitful representation of his purpose and intention to marry plaintiff and his subsequent breach of promise of marriage, defendant induced plaintiff to pay over funds or issue checks to defendant for his own use and benefit, and to pledge her financial credit on his behalf, and caused plaintiff to suffer great humiliation, embarrassment and ridicule, and to incur heavy financial loss to plaintiff's loss and damage in the sum of two thousand five hundred ($2,500.00) dollars."

In the second cause of action plaintiff alleges:

"While defendant fraudulently and deceitfully represented to plaintiff and others that he proposed and intended to marry plaintiff in the immediate future, plaintiff, at defendant's instigation and request, made and executed her certain check upon the Citizens & Southern Bank of South Carolina, dated July 24, 1948, payable to the order of Ray Waits Motors, Inc., in the sum of one thousand five hundred ($1,500.00) dollars, and to deliver said check to the defendant, the said sum of one thousand five hundred ($1,500.00) dollars, being the balance payable in cash for the purchase of a certain Pontiac automobile, to wit: 1948 Convertible Sedan, 1949 S. C. license No. 6071.

At and prior to the execution of said check and the delivery of same, it was mutually understood by and between plaintiff and defendant that the title deed to said car and all papers incident or pertaining to its ownership, would show that said car was owned jointly by plaintiff and defendant, in contemplation of marriage and of the use and enjoyment of said car in common.

"Defendant, in disregard and violation of the foregoing understanding, and in breach of the trust thereby created and

without plaintiff's knowledge and consent, used the said check, and the funds of the plaintiff represented thereby, to purchase said automobile and to register same in his own name solely.

"Defendant thereafter repudiated his contract of marriage with plaintiff and took exclusive possession of said automobile, retained title thereto in his own name and used and still uses same as his own.

"Plaintiff by reason of the foregoing acts of defendant, has suffered loss and damage in the sum of one thousand five hundred ($1,500.00) dollars."

The prayer is for judgment against defendant for $4,-000.00; "that a constructive trust be declared in plaintiff's favor in said automobile to the value of $1,500.00"; and that the automobile be sold and the proceeds of sale, after the payment of costs and expenses, be first applied to the payment to plaintiff of said sum of $1,500.00. Plaintiff further asked "that pending a final disposition of said automobile as this Court shall direct, the same be impounded by the Sheriff of Charleston County forthwith and held by him subject to further order of this Court."

As to each cause of action, defendant entered a general denial and further alleged "that any money or credit advanced to him by plaintiff has been fully paid and satisfied and that defendant is not indebted to plaintiff in any way."

Upon the filing of the complaint, the Court below issued an order directing the Sheriff, upon plaintiff's furnishing an indemnity bond in the sum of $750.00 to seize the automobile and hold same subject to the further order of the Court, and requiring defendant to show cause why the automobile should not "remain impounded in the custody of said sheriff pending the order of this court for the sale or other disposition thereof." Plaintiff promptly filed the bond provided for by said order and the automobile was seized by the Sheriff. Thereafter a hearing was had and after considering defend-

ant's return and various affidavits filed by the parties, the Court dismissed the rule to show cause and directed the Sheriff to return the automobile to defendant, and at the same time *sua sponte* issued an order of reference. Plaintiff appealed from the first order and the defendant from the second. Both appeals were heard at the same term of Court. The appeal of the plaintiff is disposed of in a separate opinion this day filed. In this opinion we are only dealing with the question of whether an order of reference was proper.

The first cause of action is clearly one at law upon which the defendant is entitled to trial by a jury. On the facts stated in the second cause of action, plaintiff could either maintain a legal action to recover the amount advanced by her in payment of the automobile or proceed in equity to establish and enforce a constructive trust or equitable lien upon said automobile to the extent of the amount so advanced. The question is which form of relief does she seek. "The character of an action is determined by the complaint in its main purpose and broad outlines and not merely by allegations that are merely incidental." *Alford v. Martin et al.,* 176 S. C. 207, 180 S. E. 13, 15. "Allegations not in harmony with the theory of the pleading will be considered surplusage." *Speizman v. Guill,* 202 S. C. 498, 25 S. E. (2d) 731, 737. "If the character of the action appears with sufficient clearness in the body of the complaint, it must control, unaffected by the prayer for relief or the intention or characterization of the pleader." *Speizman v. Guill, supra.* While the prayer constitutes no part of the plaintiff's cause of action, *Daniel, Attorney General et al. v. Conestee Mills,* 183 S. C. 337, 191 S. E. 76, it "is an element which may properly be considered in determining the legal or equitable character of an action, and, where the complaint states facts which would support either a legal or an equitable action, the relief demanded will ordinarily determine its character." 1 C. J. S., Actions, § 54, page 1155. In *Speizman v. Guill, supra,* the Court said: "In a case where it is

material or necessary to determine which of two different remedies arising upon the same state of facts a party has elected to pursue, undoubtedly the prayer for relief may be considered at least as tending to indicate which remedy the plaintiff elected."

Considering the second cause of action in the light of the foregoing principles, we think that plaintiff has elected to proceed on the theory of a constructive trust. The circumstances under which such a trust arises are discussed at length in the following cases, some of them quite recent: *Bank of Williston v. Alderman*, 106 S. C. 386, 91 S. E. 296; *Green v. Brown et al.*, 199 S. C. 218, 19 S. E. (2d) 114; *All w. Prillaman et al.*, 200 S. C. 279, 20 S. E. (2d) 741, 159 A. L. R. 981; *Dominick et al. v. Rhodes et al.*, 202 S. C. 139, 24 S. E. (2d) 168; *Searson v. Webb et al.*, 208 S. C. 453, 38 S. E. (2d) 654. Under the authority of these decisions, we think the allegations stated in the second cause of action, liberally construed, are sufficient to support the relief sought.

Error is imputed by the exceptions in not giving defendant an opportunity to be heard on the question of whether the case should be referred. Only casual reference is made to this in defendant's brief. However, Section 653 of the Code of 1942 provides that in certain cases, including equitable actions, the Court may, where the parties do not consent, direct a reference upon the application of either party "or its own motion." It is well established in equity cases "that the Judge may either hear the case himself or pass a compulsory order of reference." *Speizman v. Guill, supra.* We are, also, satisfied that if counsel for defendant had intimated to the Court a desire to be heard on this question, the request would have been granted.

We conclude that the Court below erred in referring the first cause of action and the order appealed from in this respect must be reversed. A compulsory order of reference as to the second cause of action was proper. Whether under

these circumstances the two causes of action may be united in the same complaint is a question not now properly before us and we intimate no opinion thereabout.

In accordance with the views expressed, the order appealed from is affirmed in part and reversed in part.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.