0306

NATIONAL BANK OF SOUTH CAROLINA, Respondent, v. W. H. DANIELS, Jr., d/b/a Daniels Tobacco Warehouse, Appellant.

(322 S. E. (2d) 689)

Court of Appeals

*Mark W. Buyck,* of *Willcox, Hardee, McLeod, Buyck & Baker,* Florence, *for appellant.*

*William E. DuRant, Jr.,* of *Schwartz, DuRant & Young,* Sumter, *for respondent.*

Heard Sept. 26, 1984.

Decided Nov. 1, 1984.

CURETON, Judge:

The respondent, National Bank of South Carolina (Bank), instituted this action to recover the collateral securing a loan or, alternatively, its fair market value. On motion of the Bank,

the circuit court ordered that the case be transferred from the jury to the non-jury roster because it was equitable in nature. W. H. Daniels, Jr., doing business as Daniels Tobacco Warehouse, appeals. We reverse and remand.

In this State, every action at law for the recovery of money only or of specific real or personal property must be tried by a jury if an issue of fact is involved unless a jury trial is waived or a reference is ordered. S. C. Code Ann. Section 15-23-60 (1976). In actions in equity, the parties are not entitled to a trial by jury as a matter of right; the trial court has discretion to grant or refuse a jury trial. S. C. Code Ann. Section 15-23-70; *Collier v. Green,* 244 S. C. 367, 137 S. E. (2d) 277 (1964).

The issue before us is whether the Bank seeks legal or equitable relief. The resolution of this issue must be determined from the character of the action as framed in the complaint. *Ogilvie v. Smith,* 215 S. C. 300, 305, 54 S. E. (2d) 860, 862 (1949).

The material allegations of the complaint are these. The Bank loaned Orvin Graham, a farmer, a sum of money which was secured by his tobacco crop. The security agreement provided that the Bank could exercise the legal remedies available to secured parties under the laws of South Carolina. The financing statement was executed and filed with the clerk of court. Graham defaulted under the agreement and the Bank acquired the right to immediate possession of the collateral. Graham, however, had sold the tobacco crop to Daniels who, with notice of the Bank's interest, had wrongfully converted the crop to his own use by selling it to certain tobacco companies. The Bank sought the return of the collateral if it existed or, alternatively, the market value of the collateral.

The Bank concedes that the action, on its face, seeks relief normally provided in an action at law — the recovery of property or damages. It argues nevertheless that its action, predicated upon Section 36-9-501(1), South Carolina Code of Laws of 1976, is an equitable action for the enforcement of its rights as a lienholder. It points out that pursuant to Section 36-9-306(2),[1] its security interest continues in the collateral in

---

[1] "Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in

the hands of the transferee, Daniels. The Bank therefore claims that its action merely seeks to enforce that interest against Daniels, an action cognizable in equity.

Section 36-9-501 of the Uniform Commerical Code establishes the rights of a secured party in the collateral after the debtor's default. Section 36-9-501(1) provides:

> When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and ... those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.

Contrary to the Bank's arguments, Section 36-9-501(1) creates no substantive cause of action in favor of the secured party. Rather, the secured party must look to state law to determine "available judicial procedures" other than foreclosing or securing a judgment against the debtor. Pre-Code remedies are still available to the secured party. 69 Am. Jur. (2d) *Secured Transactions* Section 260 (1973).

*Stokes v. Liverpool & London & Globe Insurance Co.*, 130 S. C. 521, 126 S. E. 649 (1925), is considered the leading pre-Code case in South Carolina on the remedies of a secured party upon the default of the debtor. The Court notes:

> When a chattel mortgage becomes past due, the mortgagee has three remedies for realizing upon his security: (1) He may peaceably take possession of the chattel, advertise and sell and apply the proceeds of sale to his secured debt, paying the surplus, if any, to the mortgagor; (2) if possession be refused, he may institute claim and delivery proceedings to get possession of the chattel for the purpose of sale as in the first instance; (3) he may institute a proceeding similar to the foreclosure of a mortgage of real estate.

*Id.* at 531, 126 S. E. 649.

We understand the Bank to argue that its action is in the nature of a judicial foreclosure. Of course an action to foreclose a chattel mortgage is an equitable proceed-

---

the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

ing. *Judson Mills v. Norris,* 166 S. C. 422, 164 S. E. 919 (1932). Moreover, "where property subject to a lien is taken and converted by a third person, the lienor's proper remedy is to proceed in equity to fix his lien on the property or its proceeds in the hands of the wrongdoer." 53 C.J.S. *Liens* § 20 (1948). The lienholder asks the court of equity to order the sale of the property to satisfy the lien. *Clarendon Holding Company v. Witherspoon,* 262 S. C. 29, 201 S. E. (2d) 924 (1974); *Patton v. Darden,* 227 Ala. 129, 148 So. 806 (1933); *Exchange Bank of Osceola v. Jarrett,* 180 Mont. 33, 588 P. (2d) 1006 (1979).

An equitable action is not the only option of the secured party, however. Several remedies at law exist for the recovery of the collateral or damages for its conversion. *Speizman v. Guill,* 202 S. C. 498, 25 S. E. (2d) 731 (1943); Uniform Commercial Code (U.L.A.) Section 9-306, Notes 2a, 22 (Supp. 1984). When the debtor defaults under the terms of a security agreement, the secured party has the right to take possession of the collateral. This right is enforceable against a transferee of the property by judicial action including replevin and claim and delivery. *Stokes v. Liverpool & London & Globe Insurance Co., supra; First Pennsylvania Banking & Trust Co. v. Liberati,* 282 Pa. Super. 198, 422 A. (2d) 1074 (1980); Nickles, *Enforcing Article 9 Security Interests Against Subordinate Buyers of Collateral,* 50 Geo. Wash. L. Rev. 511, 513 (1982) (citing, *inter alia, Stephenson Finance Co. of Augusta, Inc. v. Bruce,* 254 S. C. 249, 174 S. E. (2d) 750 (1970) ).

The Bank's complaint clearly seeks relief by an action for claim and delivery. The complaint neither mentions foreclosure nor requests a judgment for sale of the tobacco. The debtor is not named as a party-defendant. Instead, the Bank seeks the return of the collateral if it still exists or, alternatively, its value. The action for claim and delivery contemplates the recovery of the specific property claimed when possible or its value when delivery is not possible. *Title v. Kennedy,* 71 S. C. 1, 50 S. E. 544 (1905).

The action in this case being one at law for claim and delivery of the collateral, we hold that Daniels is entitled to a trial by jury. Upon this finding, the order of the circuit court is reversed and the case is remanded for trial consistent with our decision herein.

Reversed and remanded.

SANDERS, C. J., and GARDNER, J., concur.